### THE LIFE ASSOCIATION OF AMERICA *vs.* FERRILL.

[This case was argued at the last term and decision reserved.]

1. When suit was brought against an insurance company for $200.00 "for two months' service as agent of the corporation," and an amendment was allowed which charged that the plaintiff had left a business worth $100.00 per month to enter defendant's service; that a part of the contract was that the rates of insurance should remain the same during its continuance; that the defendant had, notwithstanding, increased the rates so that it was impossible for the plaintiff to secure any policies; and that plaintiff was damaged to the amount of $200.00, such amendment did not add a count *ex delicto.*

2. Exception to an amendment comes too late at a term subsequent to that at which it was allowed.

3. Where an insurance company employed an agent and agreed with him not to change the rates of insurance during his employment, and nevertheless did increase them so that he could secure no policies, in an action by him for breach of contract, the measure of recovery would be what he would have earned had such increase of rates not been made.

---

Principal and agent. Practice in the Superior Court. Contracts. Damages. Before Judge CHISHOLM. City Court of Savannah. May Term, 1877.

Reported in the decision.

JACKSON, LAWTON & BASINGER, for plaintiff in error.

RUFUS E. LESTER, for defendant.

WARNER, Chief Justice.

This action was commenced by attachment, returnable to the city court of Savannah, at its May term, 1876, taken

out by Benjamin B. Ferrill, against the Life Association of America. At that term the plaintiff filed his declaration upon an account for $200.00 for "two months' services as agent for the corporation at $100.00 per month, for January and February, 1876." The defendant pleaded the general issue; and at the July term of the same year—the next in course—the plaintiff filed an amendment to his declaration, in which he alleged as follows, in substance, viz:

That on August 17, 1875, he was engaged in business worth to him $100.00 per month, which was secured to him for twelve months from that date; that the defendant, in consideration that the plaintiff would relinquish that business and devote his time exclusively to the business of the defendant, agreed with him that he should become its agent for a certain territory, and that he should be paid for his services certain specified commissions; that the defendant, in consideration of the premises, promised the plaintiff that the rates of insurance should remain the same during the continuance of the agreement and should not be raised, and that the agreement was to continue for one year from the date aforesaid, with the privilege to either party to terminante it at any time after January 1, 1876, upon giving the other thirty days' notice in writing; that the plaintiff entered upon the service of the defendant under said agreement, and performed his part of it until March 1, 1876, when it was terminated by notice previously given by the defendant; but that the defendant, for the purpose of curtailing its business, and for the purpose of injuring the plaintiff, increased its rates of insurance to such an extent that it became impossible for the plaintiff to secure policies; whereby the plaintiff was injured to the amount of two hundred dollars.

No demand for a jury trial having been made, the cause came on to be heard before the judge alone, on the 15th day of May, 1877, during the regular term of the court for that month.

The defendant moved the court to strike out the amend-

ment aforesaid on the ground that it added to a declaration *ex contractu* a new and different cause of action arising *ex delicto;* but the motion was denied.

The plaintiff introduced the following evidence, viz:

1. A written contract between the plaintiff and the defendant, under which the plaintiff became the agent of the company, bearing date August 17, 1875, from which the following extracts are made:

After stating that the Life Association of America had appointed Ferrill to be its agent " for the purpose of soliciting applications for insurance, and collecting, and remitting premiums for the same " in certain counties of Georgia, the agreement proceeds—" now, for and in consideration of the above agreement and appointment, the said party of the second part (Ferrill) agrees to devote his time exclusively to the interests of the association, and to strictly adhere to and abide by all and any instructions he may, from time to time, receive from the association regarding the transaction of business."

After some provisions on various points of duty not relevant to this cause, comes this clause, viz " Said party of the second part also agrees that he will not engage in any other business, nor represent any other insurance company during the continuance of this contract, without the written consent of the association."

Then follow a number of stipulations with regard to the commissions to which Ferrill was to be entitled, and other subjects, among which are the following, which alone are of any importance in this case, viz: " It is further agreed that the association shall guarantee the said party of the second part one hundred dollars per month until the first day of January, 1876, should the commissions on his work as above not amount to one hundred dollars per month;" and "It is further agreed by and between the parties hereto, that this contract shall continue and be in force for the term of one year from the date hereof, but may be annulled by either party

after January 1st, 1876, by giving thirty days' notice of the desire so to do."

2. The plaintiff himself was then sworn, and testified as follows :

" At the time of making the contract, I was deputy ordinary of Chatham county ; was receiving $100.00 per month. Mr. Barr induced me to give up this office to accept the agency of the Life Association of America. He showed me the rates of insurance charged by the company, which were discussed. They were the usual rates of other companies doing business here. Mr. Barr did not enter into any engagement in express terms on the part of the company that the rates should not be increased. But my contract was based altogether upon the rates he showed me. Afterwards, about October 1st, the rates were increased without my consent. And for this cause I could get no more policies taken after that time. I got no applications at all. The company continued to pay the $100.00 per month until January 1st, 1876. After that, the company gave me notice that it would annul the contract as provided in the agreement : and the contract was in fact annulled about March 1st, 1876. I cannot say how many policies I would have earned if the rates had not been increased, or what commissions I would have earned. There was a great deal of competition, and I think the increase of rates prevented me from getting policies ; in fact, I know that the increased rates prevented my doing new business for the company. I did all I could for the company. I represented no other life insurance company. I think my time was worth $100.00 per month during the months of January and February."

3. The plaintiff then introduced certain letters received by him from officers of the company, from which the following extracts are made as alone pertinent to the cause :

" ST. LOUIS, September 8, 1875.

" *B. B. Ferrill, Esq., Savannah, Ga.* :

" The mortality experience of the association in the

southern states from its organization to the present time has been carefully examined, policy by policy; and the result, quite unfavorable, made known to the directors at a recent meeting. The directors having ascertained that the experience of a number of other companies confirms that of this association, they have determined, instead of withdrawing from your state, as other companies have done, to continue their agency; increasing the rates to be charged in certain portions and reducing them in others, as experience has shown to be necessary. In Georgia and Alabama the increased rates will be charged in all portions of those states lying south of the 33d parallel, etc. I inclose a memo. that will give you an idea of the rates that will be charged on all applications for your state, completed on and after October 1, 1875.

.     .     .     .     .     .     .     .

Gen. Hood was present at the meeting of directors, and examined the statement of mortality-experience, and was fully satisfied of the wisdom of the action of the board.

" H. W. HOUGH, President."

" ST. LOUIS, Sept. 10, 1875.

.     .     .     .     .     .     .     .

" I wrote you on the 8th inst. in reference to the change of rates to take place on the 1st prox., which change will affect you—whether you will think favorably or unfavorably, I cannot say. I would prefer to hear from you before preparing any amount of supplies for your agency.

" H. W. HOUGH, President."

"ST. LOUIS, February 12, 1876.

.     .     .     .     .     .     .     .

" Since writing to you yesterday, the subject of your contract has been under consideration. As you are not able, on account of rates, to do any business for us, it does not seem to us advisable to hold the contract. We, therefore, give you notice that thirty days from date hereof we shall regard the contract as terminated.     J. S. PIERCE,

" Secretary."

The plaintiff here closed his case, and the defendant introduced the following evidence, viz. :

1. The depositions of S. M. Barr, which were as follows :

"I know the parties. I made a contract with Mr. Ferrill as agent of the Life Association of America. There was nothing said by me in regard to rates. He objected to the rates then existing. Neither for myself nor the company did I make any promise about the rates, nor agreement either about the rates. The contract made by me with Mr. Ferrill will explain itself."

2. Several letters between the plaintiff and the president of the Life Association, from which the following extracts are made :

"St. Louis, August 24, 1875.

"*Col. B. B. Ferrill, Savannah, Ga. :*

.   .   .   .   .   .   .   .

"At the request of Mr. Barr, the association consents that you may continue the ticket agency for the Cunard steamers running from New York to Liverpool; also to do a brokerage business for fire insurance company.

"H. W. Hough, President."

"Savannah, Ga., August 28, 1875.

"*H. W. Hough, Esq., St. Louis, Mo. :*

.   .   .   .   .   .   .   .

"Family physicians, in giving certificates, charge for same, which I cannot afford to pay; and the rates of the company are so high that the party desiring insurance refuses to pay also. What shall I do? etc. For the present I do not expect to do much—money is too tight.

.   .   .   .   .   .   .   .

"B. B. Ferrill."

"Savannah, September 16, 1875.

"*H. W. Hough, Esq., St. Louis, Mo. :*

"I am in receipt of yours of 10th inst., and in reply, beg to say the change of rates referred to will not take here. I very much regret the change, as I have been working hard for the Life Association, and have on my memorandum

book at least a dozen promises by the middle of October. Should I be obliged to adopt the new rates, I fear I shall be unable to do any business.

.      .      .      .      .      .      .      .

" I shall await your reply with a great deal of anxiety, and trust that you may be able so to manage rates that I can do for you a fine business this winter. As regards mortality, would ask that you allow me to continue at old rates, and compare the class of risks I send with those you have received heretofore; and if mortality does not show a very decided difference, I shall cheerfully yield.

"B. B. FERRILL."

"St. Louis, September 27, 1875.

" *Col. B. B. Ferrill, Savannah, Ga.:*

" The application made in yours of the 16th, to be allowed to continue business at Savannah on the old rates on and after October 2d has been carefully considered by the company. The subject of your letter has also been considered in a meeting of the general board. They see no reason to change the lines they have given them, and cannot, therefore, give you the privilege asked for of continuing present rates at Savannah after October 1. Mr. Barr has forwarded to me a letter that you wrote him under date of the 14th inst., in which you seem to think no business can be done at the increased rates. Please let me hear from you, as I suppose, if such will be the case, you would hardly care to continue your connection with the association, etc.

"H. W. HOUGH, President."

"SAVANNAH, October 1, 1876.

" *H. W. Hough, Esq., President, etc.:*

" I am in receipt of yours of the 27th ult., and say in reply that I will use every effort to get business for the company. Now that things are looking up, I hope to be able to send applications on. I resigned a position, as Mr. Barr knows, to accept the agency of the Life Association, and certainly will not give up the agency until I find that no business can be done.      "B. B. FERRILL."

The defendant here closed; and thereupon, after argument heard, the judge gave judgment for the plaintiff in the sum of $200.00. And the defendant excepted, and assigned the following errors, viz:

1. That the refusal of the judge to strike out the amendment to the plaintiff's petition was erroneous.

2. That the final judgment for the plaintiff was contrary to the law and the evidence, and an erroneous judgment upon the evidence produced.

1. 2. The court did not err in allowing the amendment to the plaintiff's declaration, but if it had erred in allowing the amendment, the objection thereto came too late. *Pettis vs. Campbell*, 47 *Ga.*, 596.

3. The basis of the plaintiff's right to recover, was the alleged breach of the contract by the defendant in increasing its rates of insurance to such an extent that it became impossible for him to secure policies and thereby earn his commissions. Assuming that the increase of the rates of insurance by the defendant was a breach of the contract, what was the measure of damages that the plaintiff was entitled to recover? Was the measure of damages what his time was worth for the two months after the 1st of January, 1876, or what the defendant agreed to guarantee him per month up to the 1st of January, 1876, for the purpose of rooting its business in that particular district of territory (which, by the way, does not appear to have taken much root before the rates were increased), or was his measure of damages what he actually lost during the months of January and February by his failure to earn commissions which he would have earned but for the increased rates of insurance? The plaintiff's complaint is, that the defendant damaged him whilst in its service during the two months after the expiration of its guaranty by raising its rates of insurance. How much would the plaintiff have earned in the way of commissions under the contract during the two months if the defendant had not raised its rates? That, in our judgment, was the measure of damages which the plaintiff was entitled to re-

cover for the alleged breach of the contract on the part of the defendant, and not what his time was worth, nor what the defendant guaranteed to give him up to the 1st of January, 1876, for the purpose of establishing its business in that particular locality.

Let the judgment of the court below be reversed.